## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Chad Eichten,                                                    BKY 10-60783

          Debtor.

## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

Chad Eichten ("Debtor") proposes the following as his Chapter 11 Plan of Reorganization pursuant to the United States Bankruptcy Code.

## I. INTRODUCTION

Defined Terms. Terms used in this Plan have the meanings given to them in the Bankruptcy Code unless the context requires otherwise. In addition, the following definitions will be used for purposes of the Plan:

"Effective Date" means the eleventh (11th) day after the day on which the Court enters an order confirming this plan. If the eleventh day is a Saturday, Sunday or Holiday, the Effective Date shall be the next day that is not a Saturday, Sunday or Holiday. Holidays shall be determined as defined in Minnesota Statute § 645.44, Subd. 5.

## II. TREATMENT OF CLAIMS AND INTERESTS

**NOTICE: THE DEBTOR INTENDS TO FILE A MOTION UNDER RULE 3012 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE TO DETERMINE THE VALUE OF HIS PROPERTIES, TO ALLOW HIM TO REDUCE SECURED CLAIMS ON SUCH PROPERTIES TO THE VALUE OF THE PROPERTIES.**

### 2.1    Classified Claims and Interests  -  Description of Holders and Treatment

### Class 1 - Class of Unsecured Creditors

Class 1 consists of the general unsecured claims against the Debtor ("Class 1 Claims"). Including anticipated deficiency claims related to the claims secured by the rental properties, the Debtor estimates that Class 1 Claims total approximately $590,000.

Treatment of Class 1

Creditors holding allowed Class 1 Claims will be paid their pro rata share of 100% of the Debtor's disposable monthly income, to be made in quarterly payments, commencing on the first full quarter after confirmation of the plan for a total of twenty quarters. Class 1 claims will also receive their pro-rata share of any proceeds of avoidance actions after payment of costs and administrative expenses incurred in prosecuting such actions.

It is anticipated quarterly payments will be a minimum of $1500. In any event, the Debtor will pay no less than what is necessary to pay unsecured creditors more than they would receive in a Chapter 7.

## Class 2 - Priority Claims Under Section 507(a)(7)

Class 2 consists of all timely filed and allowed priority claims for security deposits paid by tenants prior to June 24, 2010 (the filing date of this case).

Treatment of Class 2

Class 2 Claims will be paid in full on the Effective Date or when they come due, which ever is later, unless the Debtor intends to object to such claim and in such case they will be paid on the eleventh (11th) day after the date on which such claim is allowed.

## Class 3-1st National Bank of Cold Spring

The Class 3 Claim is made up of the Debtor's obligations to 1st National Bank of Cold Spring under that certain Note in the original principal amount of $96,000.00 (the "1st National Note").

The Debtor's obligations under the 1st National Note are secured under that certain Mortgage dated August 27, 2004 (the "1st National Mortgage"), under which the Debtor granted 1st National Bank of Cold Spring a mortgage interest in his properties located at 17207 Fisher Road, Cold Spring in Stearns County, Minnesota. The property is legally described as follows:

> Section 28 Township 123 Range 030, Lots 4 & 5 Regina Park Less FR'L .21 Acres of Gvt Lot 4 the Two sad Lots and S of S Regina Park Part of Lot 4 to Thorson  Also Section 28 Township 123 Range 030 Lying N of R/W of Traveled Road.

> (the "Property").

The 1st National Mortgage on Property was recorded in the office of the Stearns County Recorder on April 22, 2003 as document number 1054895. Assignments of rents were filed contemporaneously with the mortgages. Class 1 is in a first position of priority on the Property.

As of the Filing Date, the unpaid balance under the 1st National Note, including principal and unpaid interest, was $94,000.00. The fair market value of the Property is $225,000.00. As such, Class 3 is fully secured.

Treatment of Class 3

Class 3 will have an allowed secured claim in the amount of $94,000.   The interest will accrue at the same non-default rate for the term of the loan and the maturity date will remain the same as the original note.  The remaining terms of the underlying loan documents will remain in effect. The terms of the Plan shall control.

**Class 4-Bank of America**

The Class 4 Claim is made up of the Debtor's obligations to Bank of America under that certain Note in the original principal amount of $470,900 (the "Bank of America 4 Note").

The Debtor's obligations under the Bank of America Note are secured under that certain Mortgage dated November 23, 2005 (the "Bank of America 4 Mortgage"), under which the Debtor granted Bank of America a mortgage interest in his property located at 18601 63rd Place North, Maple Grove in Hennepin County, Minnesota.  The property is legally described as follows:

> Lot 4 Block 1 Fieldstone 4th Addition, Hennepin County, Minnesota
>
> (the "Property").

The Bank of America  4 Mortgage on the Property was recorded in the office of the Hennepin County  Registrar of Titles on December 29, 2005 as document number 4208432.  The Bank of America 4 Mortgage was originally in the name of Mortgage Electronic Registration Services, Inc. (hereinafter referred to as "MERS") as nominee for Universal American Mortgage Company, LLC and, upon information and belief, was assigned to Bank of America.

Class 2 is in a first position of priority on the Property.

As of the Filing Date, the unpaid balance under the Bank of America 4 Note, including principal and unpaid interest, was $470,900.00.  The fair market value of the Property is $450,000.  As such, Class 4 is under secured.  However, this is the Debtor's former homestead in which his wife who has filed for divorce lives, in which case it may be subject to homestead status under 11 U.S.C. §  1123(b)(5).

Treatment of Class 4

Class 4 will have an allowed secured claim in the amount of $470,900.   The interest will accrue at the same non-default rate for the term of the loan and the maturity date will remain the same as the original note.  The remaining terms of the underlying loan documents will remain in effect.

**Class 5-Bank of America**

The Class 5 Claim is made up of the Debtor's obligations to Bank of America under that certain Note in the original principal amount of $58,580 (the "Bank of America 5 Note").

The Debtor's obligations under the Bank of America Note are secured under that certain Mortgage dated November 23, 2005 (the "Bank of America 5 Mortgage"), under which the Debtor granted Bank of America a mortgage interest in his property located at 18601 63rd Place North, Maple Grove in Hennepin County, Minnesota.  The property is legally described as follow:

> Lot 4 Block 1 Fieldstone 4th Addition, Hennepin County, Minnesota

> (the "Property").

The Bank of America 5 Mortgage on the Property was recorded in the office of the Hennepin County Registrar of Titles on December 29, 2005 as document number 4208433.  The Bank of America 5 Mortgage was originally in the name of MERS and upon information and belief was assigned to Bank of America.

Class 5 is in a second position of priority on the Property.

As of the Filing Date, the unpaid balance under the Bank of America 5 Note, including principal and unpaid interest, was $25,340.00.  As of the Filing Date, the total unpaid balance owed to classes with a superior position of priority on the Property was $470,900.  The fair market value of the Property is $450,000.  As such, Class 5 is unsecured.  However, this is the Debtor's former homestead in which his wife who has filed for divorce lives, in which case it may be subject to homestead status under 11 U.S.C. §  1123(b)(5).

<u>Treatment of Class 5</u>

Class 5 will have an allowed secured claim in the amount of $25,340.   The interest will accrue at the same non-default rate for the term of the loan and the maturity date will remain the same as the original note.  The remaining terms of the underlying loan documents will remain in effect.

## Class 6-Citimortgage

The Class 6 Claim is made up of the Debtor's obligations to Citimortgage under that certain Note in the original principal amount of $167,500 (the "CM Note").

The Debtor's obligations under the CM Note are secured under that certain Mortgage dated May 16, 2003 (the "CM Mortgage"), under which the Debtor granted Citimortgage a mortgage interest in his property located at 4930 Olive Lane North, Plymouth in Hennepin County, Minnesota.  The property is legally described as follows:

> Lot 4 Block 2 Conor Meadows, Hennepin County, Minnesota

> (the "Property").

The CM Mortgage on the Property was recorded in the office of the Hennepin County Recorder on June 23, 2003 as document number 8082671.  The CM Mortgage was originally in the name

of MERS as nominee for Bell Mortgage, LLC and, upon information and belief, was assigned to CitiMortgage.

Class 6 is in a first position of priority on the Property.

As of the Filing Date, the unpaid balance under the CM Note, including principal and unpaid interest, was $150,064.00.  The fair market value of the Property is $335,000.00.  As such, Class 6 is fully secured.

Treatment of Class 6

Class 6 will have an allowed secured claim in the amount of $150,064.00.   The CM Note will be amended as follows.  The principal will be $150,064.00.  Interest will accrue at the rate of 5% for the term of the loan and the maturity date will be the seventeenth anniversary of the Effective Date.

The principal amount will be amortized over thirty years.  Monthly payments will be principal and interest and will be $805.58. The note shall be nonrecourse.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

**Class 7-PNC Bank**

The Class 7 Claim is made up of the Debtor's obligations to PNC Bank under that certain Note in the original principal amount of $188,000 (the "PNC Note").

The Debtor's obligations under the PNC Note are secured under that certain Mortgage dated December 8, 2005 (the "PNC Mortgage"), under which the Debtor granted PNC Bank a mortgage interest in his property located at 4930 Olive Lane North, Plymouth in Hennepin County, Minnesota.  The property is legally described as follows:

> Lot 4 Block 2 Conor Meadows, Hennepin County, Minnesota

> (the "Property").

The PNC Mortgage on the Property was recorded in the office of the Hennepin County Recorder on April 5, 2006 as document number 8774221.

Class 7 is in a second position of priority on the Property.

As of the Filing Date, the unpaid balance under the PNC Note, including principal and unpaid interest, was $188,000.00.  As of the Filing Date, the total unpaid balance owed to classes with a superior position of priority on the Property was $150,064.00.  The fair market value of the Property is $335,000.00.  As such, Class 7 is under secured.

Treatment of Class 7

Class 7 will have an allowed secured claim in the amount of $184,936.00.   The PNC Note will be amended as follows.  The principal will be $184,936.00.  Interest will accrue at the rate of 3.25% for the term of the loan and the maturity date will be the fifteenth anniversary of the Effective Date.

The principal amount will be amortized over thirty years.  Monthly payments will be principal and interest and will be $804.85. The note shall be nonrecourse.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Class 7 will also have an allowed unsecured claim of $3,064.

**Class 8-America's Servicing Company (ASC)**

The Class 8 Claim is made up of the Debtor's obligations to America's Servicing Company under that certain Note in the original principal amount of $179,832 (the "ASC Note").

The Debtor's obligations under the ASC Note are secured under that certain Mortgage dated July 28, 2005 (the "ASC Mortgage"), under which the Debtor granted ASC Mortgage a mortgage interest in his property located at 10643 Pond Curve, Woodbury in Washington County, Minnesota.  The property is legally described as follows:

> Lot 3 Block 11, Fairway Meadows 2nd Addition. Common Interest Community No. 221, Washington County, Minnesota
>
> (the "Property").

The ASC Mortgage on the Property was recorded in the office of the Washington County Recorder on August 18, 2005 as document number 3533759.  The ASC Mortgage was originally in the name of MERS as nominee for Integrity Lending, Inc. and was, upon information and belief, assigned to America's Servicing Company.

A corrective mortgage was filed on January 24, 2006 as document number 3565641.

Class 8 is in a first position of priority on the Property.

As of the Filing Date, the unpaid balance under the ASC Note, including principal and unpaid interest, was $179,832.  The fair market value of the Property is $135,000.00.  As such, Class 8 is under secured.

<u>Treatment of Class 8</u>

Class 8 will have an allowed secured claim in the amount of $135,000.00.   The CM Note will be
amended as follows.  The principal will be $135,000.00.  Interest will accrue at the rate of 5% for
the term of the loan and the maturity date will be the twenty-fifth anniversary of the Effective
Date.

The principal amount will be amortized over thirty years.  Monthly payments will be principal
and interest and will be $724.21. The note shall be nonrecourse.  There shall be no prepayment
penalties and the outstanding principal and interest may be paid at any time.  The remaining
terms of the underlying loan documents will remain in effect.  To the extent the terms of the
original underlying loan documents conflict with the terms of the Plan, the terms of the Plan
shall control.

Class 8 will also have an allowed unsecured claim of $44,832.

## **Class 9-Bank of America**

The Class 9 Claim is made up of the Debtor's obligations to Bank of America under that certain
Note in the original principal amount of $139,312 (the "Bank of America 9 Note").

The Debtor's obligations under the Bank of America 9 Note are secured under that certain
Mortgage dated May 26, 2005 (the "Bank of America 9 Mortgage"), under which the Debtor
granted Bank of America a mortgage interest in his property located at 14588 Sumter Avenue,
Savage in Scott County, Minnesota.  The property is legally described as follows:

> Unit No. 38, CIC No. 1129, Ridgewood Condominiums, a condominium, Scott County,
> Minnesota
>
> (the "Property").

The Bank of America 9 Mortgage on the Property was recorded in the office of the Scott County
Recorder on June 7, 2005, as document number A700674.  The Bank of America 9 Mortgage
was originally in the name of People's Choice Mortgage and was subsequently assigned to
Countrywide Document Custody Services, then to Countrywide Home Loans, Inc. and then upon
information and belief, to Bank of America.

Class 9 is in a first position of priority on the Property.

As of the Filing Date, the unpaid balance under the Bank of America 9 Note, including principal
and unpaid interest, was $150,492.  The fair market value of the Property is $124,000.00.  As
such, Class 9 is undersecured.

<u>Treatment of Class 9</u>

Class 9 will have an allowed secured claim in the amount of $124,000.00.   The Bank of
America 9 Note will be amended as follows.  The principal will be $124,000.00.  Interest will

accrue at the rate of 5% for the term of the loan and the maturity date will be the twenty-fifth anniversary of the Effective Date.

The principal amount will be amortized over thirty years.  Monthly payments will be principal and interest and will be $665.66. The note shall be nonrecourse.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Class 9 will also have an allowed unsecured claim of $26,492.

### Class 10-Aurora Loan Services, LLC

The Class 10 Claim is made up of the Debtor's obligations to Aurora Loan Services, LLC under that certain Note in the original principal amount of $174,250 (the "Aurora Note").

The Debtor's obligations under the Aurora Note are secured under that certain Mortgage dated February 24, 2006 (the "Aurora Mortgage"), under which the Debtor granted Aurora a mortgage interest in his property located at 17849-66th Avenue N, Maple Grove in Hennepin County, Minnesota.  The property is legally described as follows:

> Unit No. 17849, Fieldstone Lodges, C.I.C. No, 1159, Hennepin County, Minnesota

> (the "Property").

The Aurora Mortgage on the Property was recorded in the office of the Hennepin County Recorder on March 21, 2006, as document number 8766392.  The Aurora Mortgage was originally in the name of MERS as nominee for Universal American Mortgage Company, LLC and, upon information and belief, was assigned to Aurora.

Class 10 is in a first position of priority on the Property.

As of the Filing Date, the unpaid balance under the Aurora Note, including principal and unpaid interest, was $174,250.00.  The fair market value of the Property is $145,000.  As such, Class 10 is under secured.

Treatment of Class 10

Class 10 will have an allowed secured claim in the amount of $145,000.00.   The Aurora Note will be amended as follows.  The principal will be $145,000.00.  Interest will accrue at the rate of 5% for the term of the loan and the maturity date will be the twenty-sixth anniversary of the Effective Date.

The principal amount will be amortized over thirty years.  Monthly payments will be principal and interest and will be $778.39. The note shall be nonrecourse.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining

terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Class 10 will also have an allowed unsecured claim of $29,250.00.

### Class 11-Ocwen Financial Corporation

The Class 11 Claim is made up of the Debtor's obligations to Ocwen Financial Corporation under that certain Note in the original principal amount of $21,750 (the "Ocwen Note").

The Debtor's obligations under the Ocwen Note are secured under that certain Mortgage dated February 24, 2006 (the "Ocwen Mortgage"), under which the Debtor granted Ocwen a mortgage interest in his property located at 17849-66th Avenue N, Maple Grove in Hennepin County, Minnesota.  The property is legally described as follows:

> Unit No. 17849, Fieldstone Lodges, C.I.C. No, 1159, Hennepin County, Minnesota
>
> (the "Property").

The Ocwen Mortgage on Property was recorded in the office of the Hennepin County Recorder on March 21, 2006, as document number 8766393.  The Ocwen Mortgage was originally in the name of MERS as nominee for Universal American Mortgage Company, LLC and, upon information and belief, was assigned to Ocwen.

Class 11 is in a second position of priority on the Property.

As of the Filing Date, the unpaid balance under the Ocwen Note, including principal and unpaid interest, was $21,343.00.  As of the Filing Date, the total unpaid balance owed to classes with a superior position of priority on the Property was $174,250.00.  The fair market value of the Property is $145,000.00.  As such, Class 11 is unsecured.

Treatment of Class 11

Class 11 will have an allowed unsecured claim of $21,343.00.  Confirmation of the Plan shall constitute an order discharging and releasing the Ocwen Mortgage.

### Class 12-Bank of America

The Class 12 Claim is made up of the Debtor's obligations to Bank of America under that certain Note in the original principal amount of $135,900 (the "Bank of America 12 Note").

The Debtor's obligations under the Bank of America 12 Note are secured under that certain Mortgage dated May 26, 2006 (the "Bank of America 12 Mortgage"), under which the Debtor granted Bank of America a mortgage interest in his property located at 5335-107th Avenue N, Brooklyn Park in Hennepin County, Minnesota.  The property is legally described as follows:

Lot 7 Block 8, Oxbow Creek 7th Addition, C.I.C. No. 1352, Hennepin County, Minnesota

(the "Property").

The Bank of America 12 Mortgage on the Property was recorded in the office of the Hennepin County Registrar of Titles on June 30, 2004, as document number 3983892.  A modification was filed on December 14, 2006 as document number 4359061.  The Bank of American 12 Mortgage was originally in the name of MERS as nominee for Countrywide Bank, N.A. and was, upon information and belief, assigned to Bank of America.

Class 12 is in a first position of priority on the Property.

As of the Filing Date, the unpaid balance under the Bank of America 12 Note, including principal and unpaid interest, was $150,131.00.  The fair market value of the Property is $129,000.00.  As such, Class 12 is under secured.

Treatment of Class 12

Class 12 will have an allowed secured claim in the amount of $129,000.00.   The Bank of America 12 Note will be amended as follows.  The principal will be $129,000.00.  Interest will accrue at the rate of 4% for the term of the loan and the maturity date will be the twenty-sixth anniversary of the Effective Date.

The principal amount will be amortized over thirty years.  Monthly payments will be principal and interest and will be $615.87. The note shall be nonrecourse.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Class 12 will also have an allowed unsecured claim of $21,131.00.

**Class 13-Bank of America**

The Class 11 Claim is made up of the Debtor's obligations to Bank of America under that certain Note in the original principal amount of $135,100 (the "Bank of America 13 Note").

The Debtor's obligations under the Bank of America 13 Note are secured under that certain Mortgage dated May 4, 2006 (the "Bank of America 13 Mortgage"), under which the Debtor granted Bank of America a mortgage interest in his property located at 15490 Tungsten St, Ramsey in Anoka County, Minnesota.  The property is legally described as follows:

Lot 41, Block 2, Alpine Acres 3rd Addition, CIC No. 157, Anoka County, Minnesota

(the "Property").

The Bank of America 13 Mortgage on the Property was recorded in the office of the Anoka County Recorder on May 12, 2006, as document number 1984439.019. The Bank of America 13 Mortgage was originally in the name of MERS as nominee for GreenPoint Mortgage Funding, Inc. and, upon information and belief, assigned to Bank of America.

Class 13 is in a first position of priority on the Property.

As of the Filing Date, the unpaid balance under the Bank of America Note, including principal and unpaid interest, was $135,053.00. The fair market value of the Property is $110,000.00. As such, Class 13 is under secured.

Treatment of Class 13

Class 13 will have an allowed secured claim in the amount of $110,000.00. The Bank of America 13 Note will be amended as follows. The principal will be $110,000.00. Interest will accrue at the rate of 5% for the term of the loan and the maturity date will be the twenty-sixth anniversary of the Effective Date.

The principal amount will be amortized over thirty years. Monthly payments will be principal and interest and will be $590.50. The note shall be nonrecourse. There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time. The remaining terms of the underlying loan documents will remain in effect. To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Class 13 will also have an allowed unsecured claim of $25,053.00.

## Class 14-EMC

The Class 14 Claim is made up of the Debtor's obligations to EMC under that certain Note in the original principal amount of $130,520 (the "EMC Note").

The Debtor's obligations under the EMC Note are secured under that certain Mortgage dated December 27, 2005 (the "EMC Mortgage"), under which the Debtor granted EMC a mortgage interest in his property located at 5095-6 149th Street N, Hugo in Washington County, Minnesota. The property is legally described as follows:

> Unit No. 61, Common Interest Community No. 257, Waters Edge Court Homes, Washington County, Minnesota
>
> (the "Property").

The EMC Mortgage on the Property was recorded in the office of the Washington County Recorder on January 24, 2006 as document number 3565628. The EMC Mortgage was originally in the name of MERS as nominee for Pulte Mortgages, LLC and then, upon information and belief, assigned to EMC.

Class 14 is in a first position of priority on the Property.

As of the Filing Date, the unpaid balance under the EMC Note, including principal and unpaid interest, was $131,308.00.  The fair market value of the Property is $105,000.00.  As such, Class 14 is under secured.

<u>Treatment of Class 14</u>

Class 14 will have an allowed secured claim in the amount of $105,000.00.   The EMC Note will be amended as follows.  The principal will be $105,000.00.  Interest will accrue at the rate of 5% for the term of the loan and the maturity date will be the twenty-sixth anniversary of the Effective Date.

The principal amount will be amortized over thirty years.  Monthly payments will be principal and interest and will be $563.66. The note shall be nonrecourse.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Class 14 will also have an allowed unsecured claim of $26,308.00.

**Class 15-EMC**

The Class 15 Claim is made up of the Debtor's obligations to EMC under that certain Note in the original principal amount of $16,315 (the "EMC 15 Note").

The Debtor's obligations under the EMC 15 Note are secured under that certain Mortgage dated December 27, 2005 (the "EMC 15 Mortgage"), under which the Debtor granted EMC a mortgage interest in his property located at 5095-6 149th Street N, Hugo in Washington County, Minnesota.  The property is legally described as follows:

> Unit No. 61, Common Interest Community No. 257, Waters Edge Court Homes, Washington County, Minnesota
>
> (the "Property").

The EMC 15 Mortgage on the Property was recorded in the office of the Washington County Recorder on January 24, 2006, as document number 3565629.  The EMC Mortgage was originally in the name of MERS as nominee for Pulte Mortgages, LLC and then, upon information and belief, assigned to EMC.

Class 15 is in a second position of priority on the Property.

As of the Filing Date, the unpaid balance under the EMC 15 Note, including principal and unpaid interest, was $16,451.00.  As of the Filing Date, the total unpaid balance owed to classes

holding a superior position of priority on the Property was $131,308.00.  The fair market value of the Property is $105,000.00.  As such, Class 15 is unsecured.

Treatment of Class 15

Class 15 will have an allowed unsecured claim of $16,451.00.  Confirmation of the Plan shall constitute an order discharging and releasing the EMC 15 Mortgage.

## Class 16-EMC

The Class 16 Claim is made up of the Debtor's obligations to EMC under that certain Note in the original principal amount of $135,992 (the "EMC 16 Note").

The Debtor's obligations under the EMC 16 Note are secured under that certain Mortgage dated December 29, 2005 (the "EMC 16 Mortgage"), under which the Debtor granted EMC a mortgage interest in his property located at 853 Newberry Lane, Chaska in Carver County, Minnesota.  The property is legally described as follows:

> Unit Number 303, Points West Carriage, and Condominium, Common Interest Community Number 83. Carver County, Minnesota

> (the "Property").

The EMC 16 Mortgage on the Property was recorded in the office of the Carver County Recorder on January 9, 2006, as document number A432669.  The EMC 16 Mortgage was originally in the name of MERS as nominee for Maribella Mortgage, LLC and, upon information and belief, assigned to EMC.

Class 16 is in a first position of priority on the Property.

As of the Filing Date, the unpaid balance under the EMC 16 Note, including principal and unpaid interest, was $137,180.00.  The fair market value of the Property is $112,000.00.  As such, Class 16 is under secured.

Treatment of Class 16

Class 16 will have an allowed secured claim in the amount of $112,000.00.   The EMC 16 Note will be amended as follows.  The principal will be $112,000.00.  Interest will accrue at the rate of 5% for the term of the loan and the maturity date will be the twenty-sixth anniversary of the Effective Date.

The principal amount will be amortized over thirty years.  Monthly payments will be principal and interest and will be $601.24. The note shall be nonrecourse.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Class 16 will also have an allowed unsecured claim of $25,180.00.

## Class 17-EMC

The Class 17 Claim is made up of the Debtor's obligations to EMC under that certain Note in the original principal amount of $33,980 (the "EMC 17 Note").

The Debtor's obligations under the EMC 17 Note are secured under that certain Mortgage dated December 29, 2005 (the "EMC 17 Mortgage"), under which the Debtor granted EMC a mortgage interest in his property located at 853 Newberry Lane, Chaska in Carver County, Minnesota.  The property is legally described as follows:

> Unit Number 303, Points West Carriage, and Condominium, Common Interest Community Number 83. Carver County, Minnesota

> (the "Property").

The EMC 17 Mortgage on the Property was recorded in the office of the Carver County Recorder on January 9, 2006, as document number A432670.  The EMC 16 Mortgage was originally in the name of MERS as nominee for Maribella Mortgage, LLC and, upon information and belief, assigned to EMC.

Class 17 is in a second position of priority on the Property.

As of the Filing Date, the unpaid balance under the EMC 17 Note, including principal and unpaid interest, was $33,674.00.  As of the Filing Date, the total unpaid balance owed to classes with a superior position of priority on the Property was $137,180.00.  The fair market value of the Property is $112,000.00.  As such, Class 17 is unsecured.

<u>Treatment of Class 17</u>

Class 17 will have an allowed unsecured claim of $33,674.00.  Confirmation of the Plan shall constitute an order discharging and releasing the EMC 17 Mortgage.

## Class 18-America's Servicing Company

The Class 18 Claim is made up of the Debtor's obligations to America's Servicing Company under that certain Note in the original principal amount of $196,600 (the "ASC 18 Note").

The Debtor's obligations under the ASC 18 Note are secured under that certain Mortgage dated May 18, 2006 (the "ASC 18 Mortgage"), under which the Debtor granted ASC a mortgage interest in his property located at 7829 Elm Grove Lane, New Hope in Hennepin County, Minnesota.  The property is legally described as follows:

> Lot 54, Block 2, Winnetka Green, CIC No. 1349, Hennepin County, Minnesota

(the "Property").

The ASC 18 Mortgage on the Property was recorded in the office of the Hennepin County Recorder on June 26, 2006, as document number 8817420.  The ASC 18 Mortgage was originally in the name of MERS as nominee for Centennial Mortgage & Funding, Inc., then was assigned to HCSB Bank USA, N.A., and then, upon information and belief, assigned to America's Servicing Company.

Class 18 is in a first position of priority on the Property.

As of the Filing Date, the unpaid balance under the ASC 18 Note, including principal and unpaid interest, was $196,600.00.  The fair market value of the Property is $145,000.00.  As such, Class 18 is undersecured.

<u>Treatment of Class 18</u>

Class 18 will have an allowed secured claim in the amount of $145,000.00.   The EMC 18 Note will be amended as follows.  The principal will be $145,000.00.  Interest will accrue at the rate of 5% for the term of the loan and the maturity date will be the twenty-sixth anniversary of the Effective Date.

The principal amount will be amortized over thirty years.  Monthly payments will be principal and interest and will be $778.39. The note shall be nonrecourse.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Class 18 will also have an allowed unsecured claim of $51,000.00.

**Class 19-GMAC Mortgage, LLC**

The Class 19 claim is made up of the Debtor's obligations to GMAC Mortgage, LLC under that certain Note in the original principal amount of $36,860 (the "GMAC Note").

The Debtor's obligations under the GMAC Note are secured under that certain Mortgage dated May 18, 2006 (the " GMAC Mortgage"), under which the Debtor granted  GMAC a mortgage interest in his property located at 7829 Elm Grove Lane, New Hope in Hennepin County, Minnesota.  The property is legally described as follows:

Lot 54, Block 2, Winnetka Green, CIC No. 1349, Hennepin County, Minnesota

(the "Property").

The GMAC Mortgage on the Property was recorded in the office of the Hennepin County Recorder on June 26, 2006, as document number 8817421.  The GMAC Mortgage was originally

in the name of MERS as nominee for Centennial Mortgage & Funding, Inc., then on information and belief, assigned to GMAC.

Class 19 is in a second position of priority on the Property.

As of the Filing Date, the unpaid balance under the GMAC Note, including principal and unpaid interest, was $36,305.00.  As of the Filing Date, the total unpaid balance owed to classes with a superior position of priority on the Property was $196,600.00.  The fair market value of the Property is $145,000.00.  As such, Class 19 is unsecured.

Treatment of Class 19

Class 19 will have an allowed unsecured claim of $36,305.00.  Confirmation of the Plan shall constitute an order discharging and releasing the GMAC Mortgage.

### Class 20-IBM LBPS

The Class 20 Claim is made up of the Debtor's obligations to IBM LBPS under that certain Note in the original principal amount of $133,600 (the "IBM Note").

The Debtor's obligations under the IBM Note are secured under that certain Mortgage dated August 17, 2006 (the "IBM Mortgage"), under which the Debtor granted IBM a mortgage interest in his property located at 10087-179th Lane NW, Elk River in Sherburne County, Minnesota.  The property is legally described as follows:

> Lot 14, Block 2, Kliever Fields 3rd Addition, CIC No. 67, Sherburne County, Minnesota
>
> (the "Property").

The IBM Mortgage on the Property was recorded in the office of the Sherburne  County Recorder on September 19, 2006, as document number 632065.  The IBM Mortgage was originally in the name of MERS for GreenPoint Mortgage Funding, Inc., and assigned to Countrywide Home Loan Servicing, LP and, upon information and belief, assigned to IBM LBPS.

Class 20 is in a first position of priority on the Property.

As of the Filing Date, the unpaid balance under the IBM Note, including principal and unpaid interest, was $133,556.00.  The fair market value of the Property is $80,000.00.  As such, Class 20 is under secured.

Treatment of Class 20

Class 20 will have an allowed secured claim in the amount of $80,000.00.   The IBM Note will be amended as follows.  The principal will be $80,000.00.  Interest will accrue at the rate of 5% for the term of the loan and the maturity date will be the twenty-sixth anniversary of the Effective Date.

The principal amount will be amortized over thirty years.  Monthly payments will be principal and interest and will be $429.46. The note shall be nonrecourse.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Class 20 will also have an allowed unsecured claim of $53,556.00.

### Class 21-Bank of America

The Class 21 Claim is made up of the Debtor's obligations to Bank of America under that certain Note in the original principal amount of $25,000 (the "Bank of America 21 Note").

The Debtor's obligations under the Bank of America 21 Note are secured under that certain Mortgage dated August 17, 2006 (the "Bank of America 21 Mortgage"), under which the Debtor granted Bank of America a mortgage interest in his property located at 10087-179th Lane NW, Elk River in Sherburne County, Minnesota.  The property is legally described as follows:

> Lot 14, Block 2, Kliever Fields 3rd Addition, CIC No. 67, Sherburne County, Minnesota
>
> (the "Property").

The Bank of America 21 Mortgage on the Property was recorded in the office of the Sherburne County Recorder on September 19, 2006, as document number 632066.  The Bank of America 21 Mortgage was originally in the name of MERS for GreenPoint Mortgage Funding, Inc., and, upon information and belief, assigned to Bank of America.
.
Class 21 is in a second position of priority on the Property.

As of the Filing Date, the unpaid balance under the Bank of America 21 Note, including principal and unpaid interest, was $24,982.00.  As of the Filing Date, the total unpaid balance owed to classes with a superior position of priority on the Property was $133,556.00.  The fair market value of the Property is $80,000.00.  As such, Class 21 is unsecured.

Treatment of Class 21

Class 21 will have an allowed unsecured claim of $24,982.00.  Confirmation of the Plan shall constitute an order discharging and releasing the Bank of America 21 Mortgage.

### Class 22-Bayview Loan Servicing, LLC

The Class 20 Claim is made up of the Debtor's obligations to Bayview Loan Servicing, LLC under that certain Note in the original principal amount of $146,768 (the "Bayview Note").

The Debtor's obligations under the Bayview Note are secured under that certain Mortgage dated March 30, 2006 (the "Bayview Mortgage"), under which the Debtor granted Bayview a mortgage interest in his property located at 19646 Escalade Way, Farmington in Dakota County, Minnesota.  The property is legally described as follows:

> Unit 0905, Charleswood Crossing, CIC # 520, Dakota County, Minnesota

> (the "Property").

The Bayview Mortgage on the Property was recorded in the office of the Dakota County Recorder on May 2, 2006, as document number 2424935.  The Bayview Mortgage was originally in the name of MERS as nominee for First Horizon Home Loan Corporation and was assigned to Bayview Loan Servicing, LLC.

Class 22 is in a first position of priority on the Property.

As of the Filing Date, the unpaid balance under the Bayview Note, including principal and unpaid interest, was $146,703.00.  The fair market value of the Property is $126,000.00.  As such, Class 22 is under secured.

<u>Treatment of Class 22</u>

Class 22 will have an allowed secured claim in the amount of $126,000.00.   The Bayview Note will be amended as follows.  The principal will be $126,000.00.  Interest will accrue at the rate of 5% for the term of the loan and the maturity date will be the twenty-sixth anniversary of the Effective Date.

The principal amount will be amortized over thirty years.  Monthly payments will be principal and interest and will be $676.40. The note shall be nonrecourse.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Class 22 will also have an allowed unsecured claim of $20,703.00.

## Class 23-First Horizon

The Class 23 Claim is made up of the Debtor's obligations to First Horizon under that certain Note in the original principal amount of $36,697 (the "FH Note").

The Debtor's obligations under the FH Note are secured under that certain Mortgage dated March 30, 2006 (the "FH Mortgage"), under which the Debtor granted First Horizon a mortgage interest in his property located at 19646 Escalade Way, Farmington in Dakota County, Minnesota.  The property is legally described as follows:

> Unit 0905, Charleswood Crossing, CIC # 520, Dakota County, Minnesota

(the "Property").

The FH Mortgage on the Property was recorded in the office of the Dakota County Recorder on May 2, 2006, as document number 2424936.

Class 23 is in a second position of priority on the Property.

As of the Filing Date, the unpaid balance under the FH Note, including principal and unpaid interest, was $36,745.00.  As of the Filing Date, the total unpaid balance owed to classes with a superior position of priority on the Property was $146,703.00.  The fair market value of the Property is $126,000.00.  As such, Class 23 is unsecured.

Treatment of Class 23

Class 23 will have an allowed unsecured claim of $36,745.00.  Confirmation of the Plan shall constitute an order discharging and releasing the FH Mortgage.

**Class 24-Chase**

The Class 24 Claim is made up of the Debtor's obligations to Chase under that certain Note in the original principal amount of $133,000 (the "Chase Note").

The Debtor's obligations under the Chase Note are secured under that certain Mortgage dated January 20, 2006 (the "Chase Mortgage"), under which the Debtor granted Chase a mortgage interest in his property located at 5307-107th Avenue N, Brooklyn Park in Hennepin County, Minnesota.  The property is legally described as follows:

Lot 5 Block 9 OXBOW CREEK 7TH ADDN

(the "Property").

The Chase Mortgage on the Property was recorded in the office of the Hennepin County Registrar of Titles on February 15, 2006 as document number 4227172.  The Chase Mortgage was originally in the name of Washington Mutual Bank, N.A. and, upon information and belief, assigned to Chase.

Class 24 is in a first position of priority on the Property.

As of the Filing Date, the unpaid balance under the Chase Note, including principal and unpaid interest, was $144,263.00.  The fair market value of the Property is $129,000.00.  As such, Class 24 is undersecured.

Treatment of Class 24

Class 24 will have an allowed secured claim in the amount of $129,000.00.   The Chase Note will be amended as follows.  The principal will be $129,000.00.  Interest will accrue at the rate of

3.721% for the term of the loan and the maturity date will be the twenty-sixth anniversary of the Effective Date.

The principal amount will be amortized over thirty years.  Monthly payments will be principal and interest and will be $595.30. The note shall be nonrecourse.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Class 24 will also have an allowed unsecured claim of $15,263.00.

**Class 25-Bank of America**

The Class 25 Claim is made up of the Debtor's obligations to Bank of America under that certain Note in the original principal amount of $170,800 (the "Bank of America 25 Note").

The Debtor's obligations under the Bank of America 25 Note are secured under that certain Mortgage dated December 27, 2006 (the "Bank of America 25 Mortgage"), under which the Debtor granted Bank of America a mortgage interest in his property located at 16628-50th Court N, Plymouth in Hennepin County, Minnesota.  The property is legally described as follows:

> Lot 54, Block 1, Timber Creek Crossing Third Addition, CIC no. 1168, Hennepin County, Minnesota
>
> (the "Property").

The Bank of America 25 Mortgage on the Property was recorded in the office of the Hennepin County Recorder on January 16, 2007, as document number 8921899.  The Bank of America 25 Mortgage was originally in the name of MERS as nominee for Universal American Mortgage Company, LLC and was, upon information and belief, assigned to BOA.

Class 25 is in a first position of priority on the Property.

As of the Filing Date, the unpaid balance under the Bank of America 25 Note, including principal and unpaid interest, was $170,800.00.  The fair market value of the Property is $191,000.00.  As such, Class 25 is fully secured.

Treatment of Class 25

Class 25 will have an allowed secured claim in the amount of $170,800.00.   The Bank of America 25 Note will be amended as follows.  The principal will be $126,000.00.  Interest will accrue at the rate of 5% for the term of the loan and the maturity date will be the twenty-sixth anniversary of the Effective Date.

The principal amount will be amortized over thirty years.  Monthly payments will be principal and interest and will be $916.89. The note shall be nonrecourse.  There shall be no prepayment

penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

## Class 26-Bank of America

The Class 26 Claim is made up of the Debtor's obligations to Bank of America under that certain Note in the original principal amount of $21,300 (the "Bank of America 26 Note").

The Debtor's obligations under the Bank of America 26 Note are secured under that certain Mortgage dated December 27, 2006 (the "Bank of America 26 Mortgage"), under which the Debtor granted Bank of America a mortgage interest in his property located at 16628-50th Court N, Plymouth in Hennepin County, Minnesota.  The property is legally described as follows:

> Lot 54, Block 1, Timber Creek Crossing Third Addition, CIC no. 1168, Hennepin County, Minnesota

> (the "Property").

The Bank of America 26 Mortgage on the Property was recorded in the office of the Hennepin County Recorder on January 16, 2007, as document number 8321900. The Bank of America 26 Mortgage was originally in the name of MERS as nominee for Universal American Mortgage Company, LLC and was, upon information and belief, assigned to BOA.

Class 26 is in a second position of priority on the Property.

As of the Filing Date, the unpaid balance under the Bank of America 26 Note, including principal and unpaid interest, was $20,952.00.  As of the Filing Date, the total unpaid balance owed to classes with a superior position of priority on the Property was $170,800.00.  The fair market value of the Property is $191,000.00.  As such, Class 26 is under secured.

Treatment of Class 26

Class 26 will have an allowed secured claim in the amount of $20,200.00.   The Bank of America 26 Note will be amended as follows.  The principal will be $20,200.00.  Interest will accrue at the rate of 5.5% for the term of the loan and the maturity date will be the twenty-sixth anniversary of the Effective Date.

The principal amount will be amortized over thirty years.  Monthly payments will be principal and interest and will be $114.69. The note shall be nonrecourse.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Class 26 will also have an allowed unsecured claim of $752.00.

**Class 27-Bank of America**

The Class 27 Claim is made up of the Debtor's obligations to Bank of America under that certain Note in the original principal amount of $139,100 (the "Bank of America 27 Note").

The Debtor's obligations under the Bank of America 27 Note are secured under that certain Mortgage dated May 31, 2005 (the "Bank of America 27 Mortgage"), under which the Debtor granted Bank of America a mortgage interest in his property located at 14596 Sumter Avenue, Savage in Scott County, Minnesota.  The property is legally described as follows:

> Unit 42, CIC 1129 Ridgewood Condominiums, Scott County, Minnesota

> (the "Property").

The Bank of America 27 Mortgage on the Property was recorded in the office of the Scott County Recorder on June 14, 2005 as document number A701534.  The Bank of America 27 Mortgage was originally in the name of MERS as nominee for GreenPoint Mortgage Funding Corp and assigned to Bank of America.

Class 27 is in a first position of priority on the Property.

As of the Filing Date, the unpaid balance under the Bank of America 27 Note, including principal and unpaid interest, was $139,042.00.  The fair market value of the Property is $124,000.00.  As such, Class 27 is under secured.

Treatment of Class 27

Class 27 will have an allowed secured claim in the amount of $124,000.   The Bank of America 27 Note will be amended as follows.  The principal will be $124,000.00.  Interest will accrue at the rate of 5% for the term of the loan and the maturity date will be the twenty-fifth anniversary of the Effective Date.

The principal amount will be amortized over thirty years.  Monthly payments will be principal and interest and will be $665.66. The note shall be nonrecourse.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Class 27 will also have an allowed unsecured claim of $15,042.00.

**Class 28-GMAC**

The Class 28 Claim is made up of the Debtor's obligations to GMAC Mortgage under that certain Note in the original principal amount of $26,100 (the "GMAC 28 Note").

The Debtor's obligations under the GMAC 28 Note are secured under that certain Mortgage dated May 31, 2005 (the "GMAC 28 Mortgage"), under which the Debtor granted GMAC Mortgage a mortgage interest in his property located at 14596 Sumter Avenue, Savage in Scott County, Minnesota.  The property is legally described as follows:

> Unit 42, CIC 1129 Ridgewood Condominiums, Scott County, Minnesota

> (the "Property").

The GMAC 28 Mortgage on the Property was recorded in the office of Scott County Recorder on June 14, 2005, as document number A701535.  The  GMAC 28 Mortgage was originally in the name of MERS as nominee for GreenPoint Mortgage Funding Corp and assigned to GMAC.

Class 28 is in a second position of priority on the Property.

As of the Filing Date, the unpaid balance under the GMAC 28 Note, including principal and unpaid interest, was $25,984.00.  As of the Filing Date, the total unpaid balance owed to classes with a superior position of priority on the Property was $139,042.00.  The fair market value of the Property is $124,000.00.  As such, Class 28 is unsecured.

<u>Treatment of Class 28</u>

Class 28 will have an allowed unsecured claim of $25,984.00.  Confirmation of the Plan shall constitute an order discharging and releasing the GMAC 28 Mortgage.

### **Class 29-Litton Loan Servicing, LP**

The Class 29 Claim is made up of the Debtor's obligations to Litton Loan Servicing, LP under that certain Note in the original principal amount of $137,600 (the "Litton Note").

The Debtor's obligations under the Litton Note are secured under that certain Mortgage dated February 21, 2006 (the "Litton Mortgage"), under which the Debtor granted Litton Loan Servicing, LP a mortgage interest in his property located at 15563 Sodium Way, Ramsey in Anoka County, Minnesota.  The property is legally described as follows:

> Lot 23, Block 1, Alpine Acres 4th Addition, CIC NO. 157, Anoka County, Minnesota

> (the "Property").

The Litton Mortgage on the Property was recorded in the office of the Anoka County Recorder on March 9, 2006, as document number1982689.005.  The Litton Mortgage was originally in the name of MERS as nominee for Centennial Mortgage & Funding, Inc. and assigned to Litton Loan Servicing, LP.

Class 28 is in a first position of priority on the Property.

As of the Filing Date, the unpaid balance under the Litton Note, including principal and unpaid interest, was $137,600.00.  The fair market value of the Property is $110,000.00.  As such, Class 29 is undersecured.

Treatment of Class 29

Class 29 will have an allowed secured claim in the amount of $110,000.   The Litton Note will be amended as follows.  The principal will be $110,000.00.  Interest will accrue at the rate of 5% for the term of the loan and the maturity date will be the twenty-sixth anniversary of the Effective Date.

The principal amount will be amortized over thirty years.  Monthly payments will be principal and interest and will be $590.50. The note shall be nonrecourse.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Class 29 will also have an allowed unsecured claim of $27,600.00.

**Class 30-U.S. Bank**

The Class 30 Claim is made up of the Debtor's obligations to U.S. Bancorp Advantage, LLC under that certain Note in the original principal amount of $142,180 (the "USB Note").

The Debtor's obligations under the USB Note are secured under that certain Mortgage dated December 22, 2005 (the "USB Mortgage"), under which the Debtor granted U.S. Bank a mortgage interest in his property located at 7602 Southridge Court, Savage in Scott County, Minnesota.  The property is legally described as follows:

> Unit 133, CIC 1129 Ridgewood Condominiums, Scott County, Minnesota

> (the "Property").

The USB Mortgage on the Property was recorded in the office of the Scott County Recorder on January 17, 2006, as document number A727113.

Class 30 is in a first position of priority on the Property.

As of the Filing Date, the unpaid balance under the USB Note, including principal and unpaid interest, was $135,613.00.  The fair market value of the Property is $124,000.00.  As such, Class 30 is undersecured.

Treatment of Class 30

Class 30 will have an allowed secured claim in the amount of $124,000.   The USB Note will be amended as follows.  The principal will be $124,000.00.  Interest will accrue at the rate of

3.125% for the term of the loan and the maturity date will be the twenty-sixth anniversary of the Effective Date.

The principal amount will be amortized over thirty years.  Monthly payments will be principal and interest and will be $531.19. The note shall be nonrecourse.  There shall be no prepayment penalties and the outstanding principal and interest may be paid at any time.  The remaining terms of the underlying loan documents will remain in effect.  To the extent the terms of the original underlying loan documents conflict with the terms of the Plan, the terms of the Plan shall control.

Class 30 will also have an allowed unsecured claim of $11,613.00.

## 2.2     Impaired and Unimpaired Classes

All classes of claims are impaired under the Plan.

## 2.3     Unclassified Claims – Description of Holders and Treatment of Claims

### 2.3.1     Pre-Petition Priority Government Claims

"Pre-Petition Priority Government Claims" consists of all timely filed and allowed claims of governmental units for pre-petition claims accorded a priority status pursuant to Section 507(a)(8) of the Bankruptcy Code.  The Debtor does not believe that it is liable on any Pre-Petition Priority Government Claims.  Pursuant to the mandates of Section 1123(a)(1) of the Bankruptcy Code, Pre-Petition Priority Government Claims are not classified in the Debtor's Plan.

Treatment of Pre-Petition Priority Government Claims

Pre-Petition Priority Government Claims will be paid, in full, over a term ending on or before the fifth anniversary of the Filing Date.  From and after the Effective Date, Pre-Petition Priority Government Claims will accrue interest on the terms and at the rate provided for in 26 U.S.C. §6621(b), and will be paid in periodic payments so that such claims are fully amortized and paid in full over a period ending not later than the date that is five years after the Filing Date.

### 2.3.2     Administrative Expenses

"Administrative Claim" means any claim for the payment of any administrative expense arising under Section 503(b) of the Bankruptcy Code.

Subject to the specific terms set forth below, the Debtor will pay each holder of an allowed Administrative Claim (except any such holder that agrees to different treatment) the allowed amount of such holder's allowed Administrative Claim, in cash, on the Effective Date; provided, however, that allowed Administrative Claims representing post-petition liabilities incurred in the ordinary course of business by the Debtor will be paid as they come due.

**(a)      Professional Fees**

Professional fees that constitute Administrative Claims are the allowed fees and costs of the professionals that have been employed in the course of the Bankruptcy Case.

Assuming the relatively orderly administration of the Bankruptcy Case, the Debtor estimates that professional fees will accrue and be paid as follows:

| Professional | Estimated Fees & Costs | Amounts Paid and/or Retainer to be Applied | Amount to be Paid through Plan |
|---|---|---|---|
| Steven B. Nosek Attorney for Debtor | $30,000 | $20,000 | $10,000 |

Provided the professionals receive Bankruptcy Court approval of their fees and expenses, the claims for professional fees identified above will be paid in full in cash on the Effective Date, or on such date as the Court may fix, or upon such other terms as may be agreed upon by the professional and the Debtor.

**(b)      U.S. Trustee Fees and Court Costs**

U.S. Trustee fees and court costs that constitute Administrative Claims are those obligations imposed by operation of 28 U.S.C. §1930 (all such fees and costs will be referred to as "U.S. Trustee Fees").

The Debtor will pay all U.S. Trustee Fees owed by the Debtor, as and when due, until the Bankruptcy Case is closed.   In addition, the Debtor will continue to comply with all reporting requirements imposed by the U.S. Trustee until this Bankruptcy Case is closed.

**(c)      Other Administrative Expense Claims**

There may be other Administrative Claims, such as the following:  (1) filed proofs of claim for administrative expenses; (2) post-petition taxes; (3) unpaid post-petition claims incurred in the ordinary course of business; and (4) certain claims associated with executory contracts and unexpired leases (the treatment of claims arising out of executory contracts and unexpired leases is more fully described in Section 3.5 below) (all of the foregoing will be referred to as "Other Administrative Claims").  The Debtor has remained current on all of its post-petition obligations, and does not believe that it is liable on any Other Administrative Claims, except as discussed below for post-petition property taxes.

To the extent that there are any allowed Other Administrative Claims, such claims will be paid, in full and in cash, on the Effective Date, or as otherwise agreed to by the Debtor and the claimant, subject to the following exception:  For claims incurred in the ordinary course of

business after the Filing Date, the Debtor will pay such claims as they become due, or otherwise in the ordinary course of Debtor's business.

## 2.4    Executory Contracts and Unexpired Leases

The Debtor is a party to executory contracts and unexpired leases described in Exhibit A. Pursuant to Section 365 of the Bankruptcy Code, a debtor in possession may either (i) assume the contract, (ii) reject the contract, or (iii) assume and assign the contract.  The treatment that any contract or lease receives in the course of a bankruptcy case dictates the nature of the claim that the non-debtor party may have by reason of the contract or lease.  Generally, the rejection of a contract or lease will give rise to a general unsecured claim for damages and pre-petition arrearages, while the assumption of a contract or lease will require that all defaults be cured, and claims related to monetary defaults will be afforded priority status under the Bankruptcy Code.

The treatment of the various executory contracts and unexpired leases to which the Debtor is a party is specified in the Schedule of Executory Contracts and Leases.

From and after the date on which an order confirming the Plan is entered, the Debtor will timely perform his obligations according to the terms of all assumed contracts, as the same may be modified by the terms of the Plan.  Notwithstanding the foregoing, with respect to arrearages outstanding as of the date on which a contract or lease is assumed, the Debtor will cure such arrearages promptly after the Effective Date, or as otherwise agreed to by the Debtor and the other party to any affected contract.

As to rejected contracts and leases, the parties to such contracts and leases may have claims arising under the terms of the relevant agreement, or arising from the rejection of the contract or lease, or both.  In accordance with the provisions of the Bankruptcy Code, any claim based on the rejection of an executory contract or unexpired lease will be treated as an unsecured claim. Unless otherwise ordered by the Court, the deadline for filing a proof of claim for any such claim arising from rejection of a contract or lease will be fixed at 30 days from the date on which an order confirming the Plan is entered.  THE INFORMATION PROVIDED HEREIN CONSTITUTES NOTICE OF THE DEADLINE FOR ASSERTING CLAIMS FOR DAMAGES FROM REJECTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE.

Contracts and Leases not Specified

If the Debtor is a party to any executory contracts or unexpired leases that are not specifically identified in the Schedule of Executory Contracts and Leases, the Debtor will REJECT all such executory contracts and unexpired leases, with the following exceptions:  (i) except as may be provided for in any prior Court order entered with respect to a motion for assumption or rejection of such executory contract or unexpired lease, and (ii) except as may be provided for in any motion pending before the Bankruptcy Court on the date of the hearing on confirmation of the Plan.  Except as may be provided otherwise herein, such rejection will be effective as of the date on which an order confirming the Plan is entered.

## III.  PROOFS OF CLAIMS AND OBJECTIONS TO CLAIMS

In general, creditors are permitted to file proofs of claims with the Bankruptcy Court pursuant to Bankruptcy Rules 3001 or 3002.  The deadline for timely filing a proof of claim for non-governmental creditors is October 25, 2010.

Certain creditors may hold or assert claims for the payment of administrative expenses of the types described in Section 503(b) of the Bankruptcy Code.  Unless otherwise ordered by the Bankruptcy Court, the deadline by which administrative claims must be timely filed is thirty days after the date on which an order confirming the Plan is entered.  Administrative expense claims must be asserted by motion filed and served by the deadline set forth herein.  SUBJECT TO SUBSEQUENT ORDER OF THE BANKRUPTCY COURT, THIS INFORMATION CONSTITUTES NOTICE OF THE DEADLINE FOR ASSERTING ADMINISTRATIVE EXPENSE CLAIMS.

Certain creditors may have claims arising from the rejection of executory contracts or unexpired leases, whether rejected under the Plan or pursuant to a motion filed during the pendency of the Bankruptcy Case.  Claims for damages arising out of such rejection must be asserted by the filing of a proof of claim within thirty days after the date on which an order confirming the Plan is entered.  Parties to executory contracts and unexpired leases that have been or may yet be rejected by the Debtor, by motion or otherwise, at or before confirmation must file proofs of claims for any damages from such rejection in accordance with the Bankruptcy Court's order approving such rejection, or, if the order does not so provide, pursuant to the terms of this paragraph.  THE INFORMATION PROVIDED HEREIN CONSTITUTES NOTICE OF THE DEADLINE FOR ASSERTING CLAIMS FOR DAMAGES FROM REJECTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE.

## IV.  CLAIMS OF THE DEBTOR AGAINST OTHERS

### 4.1    Claims from Bankruptcy Laws – Preferences, etc.

The bankruptcy laws create a number of claims and causes of action that a debtor-in-possession may pursue for the benefit of the bankruptcy estate.  Among the rights of recovery that are available to a debtor-in-possession are those based on theories of preferential and fraudulent transfer.

A preference is a payment or other transfer of property to or for the benefit of a creditor, before the bankruptcy case was commenced, on account of an antecedent debt, that: (1) was made while the debtor was insolvent; (2) was made within the time period(s) specified in Section 547(b)(4) of the Bankruptcy Code; and (3) enabled the creditor receiving the transfer to receive more than the creditor would receive if the case were a case under Chapter 7 of the Bankruptcy Code. When a debtor avoids a preferential transfer, the preference defendant is required to return the payment or other transfer made, and the preference defendant then ordinarily has an unsecured claim in the amount of the returned preference.

An avoidable fraudulent conveyance under the bankruptcy laws is a transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was either: (a) undertaken with actual intent to hinder, delay, or defraud any present or future creditor; or (b) a transaction under which the debtor received less than a reasonably equivalent value, and (i) the debtor was insolvent on the date the transfer was made or such obligation was incurred or became insolvent as a result of such transfer or obligation; (ii) the debtor was engaged in business or a transaction, or was about to engage in such business or transaction for which the debtor's remaining assets would be insufficient; or (iii) the debtor intended to incur or believed that it would incur debts that would be beyond the debtor's ability to pay as such debts matured.

Based on a review of its records so far, the Debtor believes that there are no viable constructively fraudulent or preferential transfers that would be subject to avoidance

The Debtor will continue its review and will pursue any avoidance actions that they determine are likely to generate recoveries for the benefit of creditors.  Any cash proceeds recovered by reason of the disposition of any avoidance action will be used first to pay administrative expenses associated with such avoidance action, and the remainder will be paid to Class 1 Creditors on a pro rata basis.

## 4.2     Setoffs

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor may, but will not be required to, setoff against any claim and the payments or other distributions to be made pursuant to the Plan in respect of such claim, claims of any nature whatsoever the Debtor may have against the holder of such claim.  Neither the failure to setoff, nor the allowance of any claim hereunder will constitute a waiver or release by the Debtor of any such claim that the Debtor may have against such holder.

## V.  POST CONFIRMATION

## 5.1     Means for Execution

## 5.1.1   Plan Funding

The Debtor will continue to earn income from the operation of rental properties.

## 5.1.2   Plan Distributions

The distributions under the Plan will be made by the Debtor on the dates provided for in the Plan, or on such earlier dates as the Debtor, in its sole discretion, may choose.  The Debtor reserves and retains the right to prepay any obligation under the Plan without penalty.  Any payment or distribution required to be made under this Plan on a day other than a business day will be made on the next succeeding business day, or as soon thereafter as practicable.

The Debtor will not be required to make any payment or distribution on account of any disputed claim until the dispute has been resolved and then only to the extent that the disputed claim

becomes an allowed claim, whether by agreement of the parties or by final order of the Bankruptcy Court.  As soon as practicable after a claim dispute is resolved, and subject to the terms of the Plan, the Debtor will pay and distribute to the holder of such allowed claim the amount provided in the Plan in the manner provided in the Plan, subject to the following condition:  The Debtor may choose, in the alternative, to make any additional payment or distribution to the creditor holding a previously disputed allowed claim to bring distributions on account of such claim current with where they would have been had the claim never been subject to objection.

In the event that any property to be distributed under the Plan remains unclaimed or otherwise not deliverable to a creditor entitled thereto as of the later of: (a) one year after the date on which an order confirming the Plan is entered; or (b) one hundred twenty (120) days after any distribution called for under the terms of the Plan, such property will become vested in and will be transferred and delivered to the Debtor.  Unclaimed property includes, but is not limited to, checks issued pursuant to the Plan and not negotiated within ninety (90) days of the date such check was issued.

The Debtor will withhold from any property distributed under this Plan, any amounts required to be withheld for federal, state, or local taxes.  The issuance, transfer or exchange of any of the securities issued under, or the transfer of any other property pursuant to this Plan, or the making or delivery of an instrument of transfer under this Plan, is exempt from application of any law imposing a stamp tax, transfer tax, or other similar tax.

Except as expressly stated in the Plan or otherwise allowed by a final order of the Bankruptcy Court, no interest, penalty, or late charge arising after the Filing Date will be allowed on any claim, regardless of whether there is any objection to the claim.  No attorneys' fees will be paid with respect to any claim except as specified in the Plan, or as allowed by a final order of the Bankruptcy Court.

Distributions to be made under this Plan to holders of allowed claims will be delivered by first class United Sates mail, postage prepaid to (a) the latest mailing address set forth in the schedules if no proof of claim was filed with respect to such claim; or (b) to the address appearing on a proof of claim as the address to which notices should be sent if a proof of claim was filed with respect to such claim.  Distributions will be deemed made as of the time they are deposited in the United States mail.

Any notices related to the Plan must be addressed as follows:

Chad Eichten
PO Box 47570
Plymouth, MN 55447
**and**
Steven B. Nosek
2855 Anthony Lane South, #201
St. Anthony, MN 55418

### 5.1.3   Implementation of Plan

The Plan will be implemented upon entry of an order confirming the Plan.

The Plan may be modified in the manner provided for under Section 1127 of the Code.  The Debtor will give notice of any proposed modification to the United States Trustee and to any other parties designated by applicable rules or by Court order.  The Debtor reserves the right to make such modifications at any hearing on confirmation as may be necessary to facilitate confirmation of the Plan, as well as the right to seek modification after confirmation to the full extent permitted under the Bankruptcy Code.

The Debtor's obligations under the Plan are contingent upon entry of an order confirming the Plan, and said order not being stayed, appealed, or otherwise challenged before the expiration of the applicable deadline; provided, however, that the Debtor may, in its sole discretion, choose to undertake and perform its obligations under the Plan notwithstanding the pendency of an appeal.

### 5.2    Reservation of Rights, Powers and Jurisdiction

### 5.2.1   Rights and Powers

Except as otherwise expressly provided in the Plan, the Debtor will retain, after confirmation of the Plan, full right and power to do any of the following:

(a)      Object to the allowance of claims;

(b)      Seek subordination of claims;

(c)      Pursue any claims against third parties, including, but not limited to those based on theories of preference, fraudulent transfer, or any other action arising under Chapter 5 of the Bankruptcy Code;

(d)      Pursue any claims and enforce any rights arising under the Bankruptcy Code in favor of a trustee or debtor-in-possession; and

(e)      Pursue any causes of action that the Debtor may have as of the date on which an order confirming the Plan is entered.  Except to the extent explicitly released under the terms of the Plan, any and all causes of action that the Debtor may have had prior to confirmation of the Plan will survive confirmation of the Plan, will vest in the Debtor as of confirmation of the Plan, and will not be affected by confirmation or the passing of the Effective Date of the Plan.

The Debtor may object to the allowance of claims within the time period provided for in the order confirming the plan, or as otherwise dictated by order of the Court.  The Debtor's authority to object to the allowance of claims will not be affected in any way by the Debtor's failure to object to allowance of any claim for purposes of voting.

### 5.2.2    Court Approval

After confirmation of the Plan, the Debtor may, but will not required to, seek the Court's approval of any of the following:

(a)    settlements regarding objections to claims;

(b)    settlements regarding claims against third parties;

(c)    settlements regarding allowance of fees and expenses incurred by professionals employed during the pendency of the Bankruptcy Case.

If the Debtor chooses to seek court approval of any such settlements, the Debtor will not be required to provide notice to creditors as would typically be provided during the chapter 11 case or to file and serve a motion for the approval of the settlement.  Instead, the Debtor will be authorized to seek approval by filing a stipulation setting forth the material terms of the settlement, along with a proposed order providing for the approval of such stipulation.

### 5.2.3    Jurisdiction

Until the Plan has been fully consummated, the Court will retain jurisdiction over, and the Debtor will retain standing and the right to pursue any cause of action, proceeding, or other request for relief related to the following:

(a)    classification of the claims of creditors;

(b)    determination of the allowed amount of any claims arising before or during the pendency of the Bankruptcy Case;

(c)    subordination of the allowed claims of creditors or liens or other interests securing such claims;

(d)    determination of any counterclaims against any creditor, including any claim for turnover of property of the Debtor and any claim for offset of the value of the property against the claim of the creditor;

(e)    determination of the allowed amount of claims for damages from the rejection of executory contracts or unexpired leases;

(f)    determination of all issues and disputes regarding title to the assets of the estate and the Debtor;

(g)    determination of all causes of actions between the Debtor and any other party, including, but not limited to, any right of the Debtor to recover assets pursuant to the provisions of the Bankruptcy Code, and to avoid any preferential or fraudulent transfers;

(h)      correction of any defect, the curing of any omission or the reconciliation of any inconsistency of the Plan or the order confirming the Plan as may be necessary to carry out the purpose and intent of the Plan;

(i)      interpretation and enforcement of the terms of the Plan;

(j)      shortening or extending, for cause, any time fixed for doing any act or thing under the Plan;

(k)      entry of any order, including any injunction, necessary to enforce the title, rights, and powers of the Debtor;

(l)      entry of an order concluding and terminating the case; and

(m)      approval of any settlement related to any of the foregoing.

The Debtor's transfer or assignment of any interests or rights will not affect the Court's retention of jurisdiction to the full extent provided herein.

## 5.3      Effects of Plan Confirmation

### 5.3.1    Binding Effect

The Plan will be binding upon and inure to the benefit of the Debtor, all present and former holders of claims against, or interests in, the Debtor, and all respective successors and assigns.

### 5.3.2    Discharge and Injunction

TO THE FULL EXTENT PROVIDED FOR IN SECTION 1141 OF THE CODE, AND SUBJECT TO ANY EXCEPTION OR QUALIFICATION UNDER SUCH SECTION, THE DEBTOR WILL BE ENTITLED TO ENTRY OF AN ORDER PROVIDING FOR THE COMPLETE DISCHARGE, WAIVER, RELEASE, AND SATISFACTION OF ALL CLAIMS AGAINST THE DEBTOR AS OF THE FILING DATE.  THE DISCHARGE WILL OPERATE TO RELEASE AND EXTINGUISH ANY PURPORTED LIENS, ENCUMBRANCES, OR SECURITY INTERESTS CLAIMED BY A CLAIMANT OR ANY OTHER ENTITY AGAINST PROPERTY OF THE DEBTOR, PROPERTY DEALT WITH BY THE PLAN, AND PROPERTY OF THE ESTATE, EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN.  THE ORDER CONFIRMING THE PLAN IS A GENERAL ADJUDICATION AND RESOLUTION WITH PREJUDICE OF ALL PENDING LEGAL PROCEEDINGS AGAINST THE DEBTOR, PROPERTY OF THE DEBTOR, OR PROPERTY OF THE ESTATE, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN.

THE DISCHARGE AND THE ORDER CONFIRMING THE PLAN OPERATE AS AN INJUNCTION TO THE EXTENT PROVIDED IN SECTION 524 OF THE BANKRUPTCY CODE, AND ONLY TO SUCH EXTENT.  ANY CREDITOR OR EQUITY HOLDER ENTITLED TO RECEIVE ANY DISTRIBUTION PURSUANT TO THIS PLAN WILL BE

PRESUMED CONCLUSIVELY TO HAVE RELEASED THE DEBTOR FROM ANY CLAIM RELATED TO THAT WITH RESPECT TO WHICH THE DISTRIBUTION IS MADE. THIS RELEASE WILL BE ENFORCEABLE AS A MATTER OF CONTRACT AGAINST ANY CREDITOR OR EQUITY HOLDER THAT ACQUIRES ANY RIGHT TO DISTRIBUTION PURSUANT TO THIS PLAN.

SUBJECT TO ANY LIMITATIONS PROVIDED FOR IN THE BANKRUPTCY CODE, UNLESS A TAXING AUTHORITY HAS ASSERTED A CLAIM AGAINST THE DEBTOR BEFORE THE DEADLINE FOR FILING CLAIMS, CONFIRMATION OF THE PLAN WILL OPERATE AS A DISCHARGE OF ANY CLAIM OR LIEN OF ANY TAXING AUTHORITY AGAINST THE DEBTOR, THE ESTATE, ANY PROPERTY OF THE DEBTOR, AND ANY PROPERTY OF THE ESTATE, FOR ANY TAXES, PENALTIES, OR INTEREST: (I) FOR ANY TAX YEAR FOR A PERIOD BEFORE THE FILING DATE; (II) ARISING OUT OF THE FAILURE OF THE DEBTOR TO FILE ANY TAX RETURN; OR (III) ARISING OUT OF AN AUDIT OF ANY TAX RETURN WITH RESPECT TO A PERIOD BEFORE THE FILING DATE.

### 5.3.3   Re-Vesting

Subject to the terms of the Plan, on the date that the order confirming the Plan is entered, the Debtor will be restored to full ownership of all property owned by the Debtor, all property of the estate, and all other rights and interests . The property so vested in the Debtor will be free and clear of all claims, liens, encumbrances, charges, and other interests of holders of claims or interests, except as otherwise provided in the Plan.

On and after the date on which the order confirming the Plan is entered, the Debtor may freely use, acquire, and dispose of property of the estate and property of the Debtor, except as otherwise provided in the Plan. Except as may otherwise be expressly provided for in the Plan or by order of the Court, the Debtor's operation of its business and use of property will not be subject to any restrictions imposed by operation of the Bankruptcy Code, the Bankruptcy Rules, or any prior Bankruptcy Court order entered during the bankruptcy case.

## VI. CONCLUSION

The Debtor believes that acceptance of the Plan is in the best interest of all parties and therefore urges all holders of claims and interests to vote in favor of the Plan.

Dated: 7 - 7 , 2010

Chad Eichten

**EXHIBIT A SCHEDULE OF EXECUTORY CONTRACTS TO BE ASSUMED**

The Debtor will assume all tenant leases in effect on the Effective Date.

**Rent Roll**
**Chad Eichten Properties**

| Address | Rent Amount |
| --- | --- |
| 4930 Olive Lane North, Plymouth | $ 2,025.00 |
| 10643 Pond Curve, Woodbury | $ 1,395.00 |
| 14588 Sumter Avenue, Savage | $ 1,095.00 |
| 17849-66th Avenue N, Maple Grove | $ 1,425.00 |
| 5335-107th Avenue N, Brooklyn Park | $ 1,325.00 |
| 15490 Tungsten St, Ramsey | $ 1,150.00 |
| 5095-6 149th Street N, Hugo | $ 1,225.00 |
| 853 Newberry Lane, Chaska | $ 1,095.00 |
| 7829 Elm Grove Lane, New Hope | $ 1,525.00 |
| 10087-179th Lane NW, Elk River | $ 1,095.00 |
| 19646 Escalade Way, Farmington | $ 1,340.00 |
| 5307-107th Avenue N, Brooklyn Park | $ 1,295.00 |
| 16628-50th Court N, Plymouth | $ 1,525.00 |
| 14596 Sumter Avenue, Savage | $ 1,195.00 |
| 15563 Sodium Way, Ramsey | $ 1,195.00 |
| 7602 Southridge Court, Savage | $ 1,225.00 |

Exhibit A